CLARK, Justice.
liWe granted these consolidated writ applications to address the majority opinion of the court of appeal which held the medical malpractice cap enunciated in La.R.S. 40:1299.42(B) is unconstitutional “to the extent it includes nurse practitioners within its ambit.” We reiterate our holding in Butler v. Flint Goodrich Hospital of Dillard University, 607 So.2d 517 (La.1992), cert. denied, 508 U.S. 909, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993), decreeing the cap constitutional. Finding the cap to be applicable to all qualified healthcare providers under the Medical Malpractice Act, including nurse practitioners, we reverse the judgment of the court of appeal in this respect. Additionally, we address two other assignments of error asserted by the Louisiana Patients’ Compensation Fund and affirm these portions of the court of appeal judgment. The effect of our holding is to reinstate the trial court judgment in full.
FACTS AND PROCEDURAL HISTORY
This case involves a malpractice judgment in favor of Taylor, Joe, and Helena | aOIiver against a nurse practitioner, Nurse Susan Duhon, her insurer, St. Paul Fire and Marine Insurance Company, the clinic she owned and operated, The Magnolia Clinic, and the Louisiana Patients’ Compensation Fund (“PCF”).

Facts in Malpractice Case

The underlying facts of the case are as follows: Taylor Oliver was born to Joe and Helena Oliver on September 5, 2000. Shortly after birth, she was brought to The Magnolia Clinic and treated by Nurse Duhon exclusively. Over the next year, Taylor visited Nurse Duhon thirty-two times, presenting with symptoms including nausea, vomiting, diarrhea, bruising, and infections. Ultimately, her condition was later diagnosed by other physicians as neuroblastoma, a form of cancer that develops from nerve cells. Taylor now suffers from severe bone loss and muscle deterioration, loss of sight, and severe cognitive disabilities.
The Olivers sued Nurse Duhon for malpractice, alleging Taylor’s delayed diagnosis and treatment caused the severity of her injuries.[1] On June 8, 2007, a jury heard the matter and returned a verdict in favor of the Olivers in the amount of approximately ten million dollars.[2] On June 29, 2007, the Olivers filed a Motion to Stay Judgment and a Petition for Declaratory Judgment, contending the provision of the *42 Louisiana Medical Malpractice Act (“MMA”) that limits the recovery of medical malpractice damages, La.R.S. 40:1299.42(B), is unconstitutional.[3] On July 30, 2007, the State of Louisiana intervened to defend the statute being challenged. A hearing Ron the constitutional issue took place on December 4 and 5, 2007.

Trial Court

The trial court rejected each of the Oli-vers’ challenges to the cap’s constitutionality; however, it found the MMA was “overly broad due to its inclusion of nurse practitioners.” On that basis, the trial court found the cap unconstitutional as it applies in this case. Nurse Duhon/St. Paul Fire and Marine Insurance Company, the PCF, and the State filed a Motion for New Trial/Reconsideration. They asserted the Olivers never challenged the inclusion of nurse practitioners within the listing of qualified healthcare providers; thus the issue was not properly before the trial court.
The trial court granted the Motion for New Trial/Reconsideration and signed a judgment reducing the jury’s award to comply with the MMA. Specifically, the judgment reduced the general damages award from the $6 million to $500,000.00 pursuant to the statutory cap, ordered the PCF to pay past medical expenses in the amount of $629,728.24 plus judicial interest, and declared Taylor to be a patient in need of future medical care and related benefits, entitling her to past, present, and future medical services and benefits.
The Olivers appealed to the Louisiana Third Circuit Court of Appeal, challenging the constitutionality ruling by the trial court. The PCF also appealed, assigning two additional errors regarding the underlying tort judgment. First, the PCF argued the trial court erred in awarding the amount for past medical and related benefits beyond those awarded by the jury. Second, the PCF averred the trial court erred in awarding the judicial interest on the past medical expenses to the Olivers when the interest is owed instead to the Louisiana Department of Health and Hospitals (“DHH”).[4]

\ ¿Court of Appeal

A five-judge panel of the court of appeal reversed the trial court’s holding that the cap is constitutional and reinstated the full jury award. The two assignments of error by the PCF were found to lack merit. Oliver v. Magnolia Clinic, 09-439 (La.App. 3 Cir. 11/17/10), 51 So.3d 874. Two judges ruled that the cap is unconstitutional as applied to nurse practitioners, while two other judges ruled that a nurse practitioner did not meet the statutory definition of a health care provider under the MMA pursuant to La.R.S. 40:1299.41, thus rendering the cap inapplicable in this case. Lastly, one judge dissented finding the cap to be constitutional in general and as applied to nurse practitioners.
Nurse Duhon/her insurer, the State, and the PCF filed separate writ applications with this court on March 22, 2011. Find *43 ing a violation of Article V, § 8(B)[5] of the Louisiana Constitution, we remanded the matter to the court of appeal for an en banc hearing so that a majority vote could be rendered on the issues. Oliver v. Magnolia Clinic, 10-2766, 10-2782, 10-2785 (La.3/25/11), 57 So.3d 307, 308.

Court of Appeal (En Banc)

On remand, a majority of the court of appeal “voted to adopt the original opinion released in this case with additional reasons.” Oliver v. Magnolia Clinic, 09-439, p. 1 (La.App. 3 Cir. 8/31/11), 71 So.3d 1170, 1173. Specifically, the court of appeal added to its previous opinion which held that the enforcement of the MMA’s cap violated the Olivers’ equal protection rights by also ruling the cap limited the Oliver’s right to an adequate remedy in violation of La. Const. Art. I, § 22. The court of appeal found it unnecessary to address the separation of powers doctrine. The majority’s opinion presented inconsistent grounds for its holding insofar as the | ¿reasoning belied the outcome.[6] Nevertheless, the opinion seemingly held the cap on damages as applied to nurse practitioners violates the equal protection and adequate remedy guarantees of the Louisiana Constitution.
Judge Saunders concurred, finding the MMA did not apply in this case but for different reasons than those enunciated by the majority. He concluded the constitutionality of the cap need not be addressed because, in his view, nurse practitioners were not covered at the time of the malpractice (prior to the 2009 amendment to La.R.S. 40:1299.41 which specifically listed nurse practitioners as qualified health care providers.) Judge Saunders rejected the argument that nurse practitioners are afforded coverage under the MMA because they are registered nurses and registered nurses were covered at the time of the incident. Instead, he explained that the two professions have differing duties and, therefore, require separate statutory listings.
Judge Painter concurred in the result for the reasons assigned by Judge Saunders.
Judge Amy dissented from the majority opinion, finding an affirmation of the trial court’s judgment was appropriate. He relied on this court’s holding in Butler, which upheld the constitutionality of the cap on damages in malpractice cases.
Judge Gremillion also dissented, reiterating the controlling precedent set by this court in Butler as discussed in Judge Amy’s dissent. Additionally, he addressed the majority’s decree which attempts to limit the holding only to nurse practitioners. [ fiFirst, Judge Gremillion challenged the majority’s consideration of the cap’s application to nurse practitioners at all in light of the Olivers’ failure to assign the alleged over-inclusion as error. Second, while he expressed his belief that nurse *44 practitioners are covered by the MMA, he addressed the underlying fallacy and inconsistency in the court of appeal’s logic by noting that the majority’s reasoning is applicable to all health care providers, not just nurse practitioners. Thus, if the majority found the cap unconstitutional as it applied to nurse practitioners, its reasoning necessarily requires a decree of unconstitutionality of the cap in general. Finally, Judge Gremillion opined that the dollar amount of the cap is a consideration best left to the legislature.
Judge Decuir dissented for the reasons assigned by Judge Amy and Judge Gremil-lion.
Nurse Duhon/St. Paul Fire and Marine Insurance Company, the State, and the PCF filed separate writ applications, challenging the rulings of the court of appeal. This court granted the writ applications, docketed them as appeals, and consolidated the cases. Oliver v. Magnolia Clinic, 11-2132, 11-2189, 11-2142 (La.11/14/11), 75 So.3d 440, 441.
DISCUSSION

Constitutionality of La.R.S. 10:1299.12

The primary issue before us is the constitutionality of La.R.S. 40:1299.42(B) as it applies to nurse practitioners.[7] The first component of that inquiry is the constitutionality of the statute as applied to any healthcare provider. We answered that question in Butler, by finding that the $500,000.00 cap on general damages in a 17medical malpractice suit is constitutional. As noted in Pelican State Associates, Inc. v. Winder, 253 La. 697, 219 So.2d 500 (1969), trial courts and courts of appeal are bound to follow the last expression of law of the Louisiana Supreme Court. Thus, the court of appeal committed error in ruling contrary to Butler. Nevertheless, we revisit our reasoning of Butler to remind courts of this State of the last expression of law relative to the cap’s constitutionality.
In this case, the court of appeal found the equal protection and adequate remedy provisions of the Louisiana Constitution were offended by the cap. Article I, § 22 guarantees every person a constitutional right to “an adequate remedy by due process of law and justice.” In pertinent part, Article I, § 3 of the Louisiana Constitution prohibits arbitrary, capricious or unreasonable discrimination on the basis of physical condition.
Relying on Everett v. Goldman, 359 So.2d 1256 (La.1978), we noted in Butler, that the right of malpractice victims to sue for damages is not a fundamental constitutional right. Accordingly, in enacting medical malpractice legislation which limits a plaintiffs monetary recovery, the State must articulate a rational basis for the discriminatory treatment reasonably related to the interest the government seeks to advance. This rational basis standard, however, shifts to a higher standard if the legislature creates a separate or suspect classification. Specifically, the State must show that a legitimate state objective is substantially furthered by the classification. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1104 (La.1985).
As observed in Sibley and reiterated in Butler, the medical malpractice cap creates two classes: those who are fully com *45 pensated by an award equal to or less than $500,000.00 and those whose severity of injuries require an award in excess of $500,000.00 and who, therefore, receive less than full compensation. The separate 1 sstatutory classification discriminates on the basis of physical condition. As noted above, in order to prove such discrimination is not arbitrary, capricious, or unreasonable, a legitimate state objective substantially furthered by the discrimination must be advanced. Sibley, 477 So.2d at 1104.
In both Butler and the instant case, the State set forth the following objective to justify the existence of the cap: limiting damages in malpractice cases lowers malpractice insurance costs, thereby assuring accessible and affordable healthcare for the public. Additionally, as memorialized in Butler, the State advanced the three effects of the cap that act to the benefit of a malpractice plaintiff: “(1) [a] greater likelihood that the offending physician or other health care provider has malpractice insurance; (2) [a] greater assurance of collection from a solvent fund; and (3) payment of all medical care and related benefits.” Butler, 607 So.2d at 521. The discrimination inherent in the cap is offset by this “alternative remedy.” Id.
This “quid pro quo” acknowledged in Butler is just as constitutionally sound today as it was when we addressed it in 1992 insofar as the same objective exists now as at the time of the legislation’s inception in 1975; ie., the legislature acted to combat the rising insurance premiums in an inherently risky industry in order to avoid a healthcare crisis in this state. Id. Both now and then, malpractice claims exceeding the cap’s monetary limit would effectively increase the probability that health care providers would not have medical malpractice insurance sufficient to pay for these uncapped damages. The result would be an underfunded, perhaps insolvent system of recovery for malpractice victims. Any discrimination resulting from the cap, while unfortunate, substantially furthers a legitimate state interest, making the “imperfect balance” “reasonable.” Id. Thus, we reiterate our holding in Butler, finding the malpractice cap constitutional as it applies to all qualified health care providers.
|9Next, we address the specific profession of nurse practitioners.[8] The record indicates the parties conceded Nurse Du-hon and The Magnolia Clinic were qualified health care providers under the MMA. However, the Olivers argue the cap on general damages (rather than the entirety of the MMA) is unconstitutional as it applies to nurse practitioners.
We find the same crisis referenced in our above discussion exists for nurse practitioners insofar as they, too, are exposed to malpractice liability. The legislature’s proven intent in enacting the cap was to afford limited protection to health care providers who qualified under the MMA in an attempt to prevent and/or treat the crisis in the medical field. We do not adopt the logic that requires the State to put on evidence of a crisis within each *46 speciality and sub-speciality of the field of health care.
Nor do we find merit in the concurring views of Judges Saunders and Painter that nurse practitioners were not statutorily covered by the MMA at the time the malpractice occurred. At the time the Olivers’ claim arose, La.R.S. 40:1299.41(A)(10) defined “health care provider” as including a “registered or licensed practical nurse or certified nurse assistant.” By Act 14 of 2009, effective August 15, 2009, the legislature amended the definition to include a “nurse practitioner.” The concurring judges believed the amendment had the effect of placing nurse practitioners under the cap for the first time. We find, however, the amendment simply clarified the legislature’s position that nurse practitioners had |inalways been covered as registered nurses. As observed by Judge Gremillion in his dissent to the original appellate decision, the legislative history of the 2009 amendment reflects that the intention was simply to clarify that nurse practitioners as registered nurses are and were always covered by the MMA.[9]
To the extent the Olivers are asking this court to enforce the provisions of the MMA that provide compensation from the PCF but to strike down the applicability of the cap that acts to limit general damages, we decline to do so. Finding that the MMA’s cap is constitutional and that nurse practitioners are covered under the MMA, we have no need to engage in a severability discussion.
Lastly, we address, what we believe to be the heart of the court of appeal’s reasoning: the perceived under-compensation in which an untouched damage cap results or could result. The effects of inflation and economic changes touch on the adequacy of the cap’s amount, rather than its constitutionality. Our job, as a court tasked with reviewing laws, is to ensure statutes are free of constitutional infirmities. Once satisfied that legislation does not infringe upon constitutional rights, any other perceived infirmity is to be addressed by the legislature. New Orleans Campaign for a Living Wage v. City of New Orleans, 02-991, pp. 12-13 (La.9/4/02), 825 So.2d 1098, 1106-1107.

Additional Assignments of Error

The PCF raises two additional assignments of error with regard to the judgment, which we will address in turn.
First, the PCF argues the court of appeal erred in affirming the award of past (pre-trial) medical and related benefits outside of those awarded by the jury. It contends the lower courts erred in ruling the Olivers are entitled to recover the Inmedical expenses incurred prior to trial but not introduced into evidence at the trial.
By way of explanation, the MMA divides the payment of “future” medical expenses into two categories: those incurred “after the date of the injury up to the date of settlement, judgment or arbitration award” and those incurred “after the date of the settlement, judgment, or arbitration award” until the claimant no longer requires the benefits. La.R.S. 40:1299.43(B)(l)(a) and (b), respectively. The former category is paid in a lump sum amount following the trial, while the latter expenses are paid as they are incurred if a patient is deemed at trial to be a “patient in need of future medical care and related benefits.” La.R.S. 40:1299.44(A)(7); La. R.S. 40:1299.44(B)(2)(a),(b), and (c); and La.R.S. 40:1299.43(A)(2). To qualify as a “patient in need of future medical care and *47 related benefits,” a jury must determine that the plaintiffs damages, exclusive of future medical care and benefits, exceed the medical malpractice cap of $500,000.00. La.R.S. 40:1299.43(A)(3). If the jury awards a total amount of less than the $500,000.00 statutory maximum, inclusive of any amount awarded for future medical expenses and benefits that will be incurred after trial, the PCF pays the total award in a lump sum amount; thus, the plaintiff is not a “patient in need of future medical care and related benefits” and is not entitled to receive later reimbursement for any costs incurred after the trial. La.R.S. 40:1299.43(A)(4).
Here, the jury awarded past medical expenses in the amount of the Medicaid lien ($629,728.24). The PCF maintains that this amount is the only amount alleged to have been incurred after the date of injury up to the judgment. As such, payment of this amount should extinguish the PCF’s liability for medical expenses incurred from the time of the injury to the time of the judgment. The PCF avers, then, that the 112trial court erroneously included a second award of past medicals in the judgment.[10]
Conversely, the Olivers argue the PCF is required to pay all medical costs related to the malpractice, regardless of the timing of the incurrence of the costs or submission of the requests for reimbursement. Particularly, the Olivers contend “future medical care and related benefits” includes all past, present, and future medical expenses. For the reasons that follow, we agree with the Olivers.
In Kelty v. Brumfield, 93-1142, pp. 10-11 (La.3/8/94), 633 So.2d 1210, 1217, we explained:
In 1984, the legislature added provisions to the MMA affording “Future medical care and related benefits” to “patients in need.” La.R.S. 40:1299.43. The purpose of the statutory provision is to grant severely injured malpractice victims, who have been deprived by the cap of compensation for any necessary medical service, a speedy, convenient, and inexpensive administrative remedy for the payment of actually incurred medical expenses, without limit except as tailored to the patient’s needs. The legislation aims to remedy to an extent the damage cap’s harsh tendency to prune recovery inversely to the injury; and it evinces legislative preference for an administrative medical relief program over simply raising the cap as other states have done. [Kinney, Gronfein, & Gannon, Indiana’s Medical Malpractice Act: Results of a Three-Year Study, 24 Ind.L.Rev. 1277 (1991).]. Another objective is to provide cost-effective, actu-arially sound methods for financing and delivering compensation for medical services necessitated by medical malpractice.
The statutory scheme is plagued by misnomers and a cumbersomely complex structure, but the objects of the provisions are fairly clear and simple. First, the added MMA provision comprehends all past, present, and future medical and related care services necessitated by a qualified health care provider’s malpractice — not just what is usually thought of as “future” medical needs. The broad category of services involved is defined as “all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, *48 prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of the injury.” La.R.S. 40:1299.43 B(l) (emphasis added). Second, all malpractice victims or patients affected by the law are divided into two major classes: (i) Any patient who will be fully compensated for all damages, including an award for past, present, and future medical and | ^related services, by a settlement and/or judgment no greater than the level set by the cap, id. A(5); (In such cases, which continue to be accommodated completely within the tort system, the PCF acts merely as an insurer to pay off its share of the liability in lump sum.); (ii) Any patient whose damages are so great that they consume the entire limits set by the cap without affording her full compensation for all past, present, and future medical and related care services necessitated by the malpractice, id. A(3), (4); (Such a person is called a “patient in need” by the statute and is entitled to receive from the PCF compensation or reimbursement for all actually incurred medical and related care expenses necessitated by the malpractice. Id. A(l), B(l), C).
As explained in Kelty, 633 So.2d at 1217, the primary purpose of La.R.S. 40:1299.43 is to compensate malpractice victims for all medical expenses related to the malpractice, especially the severely injured who would be disadvantaged by the statutory cap otherwise. For situations where all the damages total an amount less than $500,000.00, a lump sum payment at the end of trial is sufficient. In cases where $500,000.00 will not cover the payment of all medicals costs, the victim is referred to the administrative scheme for payment as costs are incurred. In either case, the MMA clearly intends to compensate victims for all medical expenses occasioned by the malpractice.
The actual pre-judgment costs which the PCF are contesting in this case are not clear. It appears the PCF is simply challenging the inclusion of the category “past medical expenses and related benefits” in the trial court’s judgment when the jury found that payment of the lien alone would satisfy the PCF’s liability for past medical expenses. However, with the statute’s purpose in mind, we find it is illogical to reason that payment of the lien eliminates the PCF’s liability for other past medical costs and related services. If an amount beyond the medical lien was incurred by Taylor prior to the judgment, the award of the medical lien in the amount of $629,728.24 did not encompass it; therefore, including the word “past” in the judgment did not result in a double recovery for the Olivers. Rather, the term merely reiterated what is already contemplated in the statutory definition of “future medical 114care and related benefits.” La.R.S. 40:1299.43(B)(l)(a) and (b).
As such, we find no merit to the PCF’s argument and affirm that portion of the court of appeal’s judgment.
Second, the PCF assigns as error the lower courts’ award of judicial interest to the Olivers on the past medical expenses paid by Medicaid. The PCF asserts that pursuant to La.R.S. 46:446 et seq., DHH has a right to recover the medical expenses it paid on behalf of Taylor. DHH’s right is protected by a privilege in its favor for the recovery of benefits paid when a third party is liable for the injury that led to the payment of such benefits. According to the PCF, the Olivers did not incur any of the costs paid by Medicaid so the PCF is legally obligated to reimburse DHH for the medical costs incurred on behalf of Taylor. DHH did not intervene in the case and did not request an award of judicial interest on the amount of the *49 lien. Thus, the PCF contends the lower courts erred in awarding judicial interest to a party which did not incur the past medical costs. We find the PCF’s argument fails for several reasons.
First, an award of judicial interest is not discretionary, insofar as it attaches automatically until the judgment is paid, whether prayed for in the petition or mentioned in the judgment. La.Code Civ.P. art. 1921; La.R.S. 13:4208; and La.R.S. 40:1299.47(M). Second, La.R.S. 46:446(A) provides:
When an injury has been sustained or an illness or death incurred by any person under circumstances creating in some third person or legal entity a legal liability or obligation to pay damages or compensation to that person or to his spouse, representative, or dependent, the Department of Health and Hospitals shall have a cause of action against such third party and/or may intervene in a suit filed by or on behalf of the injured, ill, or deceased person or his spouse, representative, or dependent against such third party to recover the assistance payments and medical expenses the Department of Health and Hospitals has paid or is obligated to pay on behalf of the injured, ill, or deceased person in connection with said injury, illness, or death.
The statute further requires the plaintiff in the suit filed by or on behalf of a recipient of Medicaid against a third party to serve a copy of the petition on DHH. 11fiLa.R.S. 46:446(B). Such person filing suit shall be responsible to the department to the extent of the medical payments or assistance received, interest, and attorney fees if he fails to have service made upon the department. Id. Additionally, the statute grants DHH a privilege for the amount it paid in medical benefits out of the total recovery collected in the suit on behalf of the Medicaid recipient. La.R.S. 46:446(F). La.R.S. 46:446(G), though, instructs that the privilege only becomes effective if:
prior to the payment of insurance proceeds, or to the payment of any judgment, settlement, or compromise on account of injuries, a written notice containing the name and address of the injured person, and if known, the name of the person alleged to be liable to the injured person on account of the injuries received, is mailed by the [DHH], or its attorney or agent, by certified mail, return receipt requested, to the injured person, to his attorney, to the person alleged to be liable to the injured person on account of the injuries sustained, to any insurance carrier which has insured such person against liability, and to any insurance company obligated by contract to pay indemnity or compensation to the injured person. This privilege shall be effective against the person given notice according to the provisions hereof, and shall not be defeated nor rendered ineffective as against the persons who have been given such notice, because of failure to give such notice to other persons named herein.
(Emphasis added). Further, pursuant to La.R.S. 46:446(H), the “potentially liable third party” is only liable to DHH for the amount of the privilege if it “received notice' in accordance with the provisions hereof’ and paid “any monies subject to the privilege herein to [the] injured person.”
Nothing in the record shows that DHH was served with a copy of the Oliver’s petition. The record does indicate, however, that DHH had knowledge of the suit. DHH certified the amount of the medical assistance payments via an affidavit of its “Program Specialist for the Medicaid *50 Third Party Liability Recovery Unit.” The affidavit referenced the instant lawsuit. DHH, then, had the opportunity to intervene or file its own cause of action, but chose not to. Additionally, DHH did not mail a written notice to the listed parties as required by La.R.S. 46:446(G); thus, the privilege on which the PCF relies to avoid the payment of judicial interest to the |, (¡Olivers is non-existent.[11]
Inasmuch as DHH has not asserted a right to the judicial interest, we decline to rule on whether the Olivers must pay to DHH the judicial interest on the amount of the lien to extinguish their own liability pursuant to La.R.S. 46:446(G) and La.R.S. 46:153(E).[12] Rather, our holding narrowly states that the PCF is not required to pay anything to DHH because DHH neither became a party to this action nor asserted its privilege against the PCF pursuant to the statutory procedure.
Accordingly, we find no error in the judgment awarding the amount of past medicals and judicial interest, which, by law, attaches to tort judgments, to the Olivers. We affirm this portion of the court of appeal’s judgment.
To conclude, we find, pursuant to the reasons explained in Butler, the MMA’s cap described in La.R.S. 40:1299.42(B) is constitutional as it applies to all qualified health care providers, including nurse practitioners. Further, the lower courts’ inclusion in the award of past medicals and judicial interest on the Medicaid lien was 117proper.
DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed in part and affirmed in part. The trial court judgment is reinstated in full.
REVERSED IN PART; AFFIRMED IN PART. TRIAL COURT JUDGMENT REINSTATED.
JOHNSON, Justice, concurs in part, dissents in part.
VICTORY, Justice, concurs in part and dissents in part with reasons.
KNOLL, Justice, concurs with reasons in the result.

. Nurse Duhon selected Dr. Jennette Bergst-edt as her consulting physician as required by law. Dr. Bergstedt was additionally named as a defendant in the instant suit but was later dismissed.

. The award consisted of $6,000,000.00 in general damages, $629,728.24 in past medical expenses, and $3,358,828.00 in future medical expenses. The jury awarded loss of consortium awards to Joe Oliver and Helena Oliver in the amounts of $33,000.00 and $200,000.00, respectively.

. The Olivers asserted the statute violated the following provisions of the Louisiana Constitution: Article I, § 2 (due process): Article I, § 3 (equal protection); Article I § 22 (adequate remedy): Article V, § 16 (original jurisdiction of the courts); Article V, § 1 (judicial power); Article II, §§ 1 and 2 (separation of powers); and Article II, § 12(3) and (7) (prohibition against special laws).

. The PCF contends the award of past medicals solely reflects the amount of the Medicaid lien. The PCF argues because the Olivers did not incur any costs associated with the treatment of Taylor at or before the time of judgment, the judicial interest belongs to the DHH, not the Olivers.

. Louisiana Constitution Article V, § 8(B) provides in pertinent part, "A majority of the judges sitting in a case shall concur to render judgment.”

. The internal inconsistency of the majority opinion is evident in its contradicting decree and analysis. The decree reflects a finding that the cap is unconstitutional only when applied to nurse practitioners for damages that exceed $500,000.00. Conversely, the court of appeal found the cap constitutional when applied to cases against nurse practitioners for damages under $500,000.00. However, this holding contradicts the majority’s earlier reasoning in the body of the opinion that the cap in general is unconstitutional for any case involving damages in excess of $500,000.00 regardless of the type of health care provider. Additionally, the court of appeal found nurse practitioners are covered for purposes of the PCF but not for the cap. This ruling is inconsistent on its surface; either a nurse practitioner is or is not covered under the MMA.

. La.R.S. 40:1299.42(B) provides, in pertinent part:
(1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical eare and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.

. The parties expended considerable effort in making the procedural argument that the Oli-vers did not challenge with sufficient specificity the over-breadth of La.R.S. 40:1299.41(A)(1) as required by the jurisprudential rule acknowledged in Vallo v. Gayle Oil Co. Inc., 94-1238, p. 8 (La. 11/30/94), 646 So.2d 859, 864 (“the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized”). Regardless of whether the Olivers adequately raised a challenge to the inclusion of nurse practitioners within the statutory definition of "health care provider,” whether the MMA applies at all in this case is a threshold issue. Thus, we will briefly address the merits of the argument.

. Minutes, House Civil Law Committee, 2009, Reg. Sess., May 4, 2009 and Minutes, Senate Committee on Judiciary A, 2009 Reg. Sess., May 19, 2009.

. The trial court’s judgment awarded $629,728.24 for past medical expenses and also decreed Taylor a patient in need of future medical care and related benefits, entitling her to “past, present, and future medical and related services and benefits....” (Emphasis added).

. At oral argument and in his brief, the Olivers' attorney explained that DHH entered into a compromise with the Olivers, wherein it agreed to accept a specified amount from the Olivers in exchange for a release of a portion of the lien. This alleged contract is not in the record; however, it could explain DHH’s absence from the suit. In any event, we find that the trial court's judgment is proper in awarding the amount of the lien and interest to the Olivers, and we are silent as to the existence or effect of any contract between the Olivers and DHH.

. Pursuant to La.R.S. 46:446(H), if the Oli-vers, as “legal representatives of the injured person” received "monies subject to the privilege herein” (by receiving written notice as described in La.R.S. 46:446(G)), they "shall be liable to the [DHH] for the amount of the privilege not to exceed the amount paid by the insurer, potentially liable third party, or other person.”
Also, La.R.S. 46:153(E) provides:
By applying for, and subsequently becoming eligible to receive, or by accepting medical assistance under provisions of this Section, the applicant or recipient shall be deemed to have made an assignment to the department of his right to any hospitalization, accident, medical, or health benefits owed to applicant or recipient by any third party, as well as rights to such benefits or medical support payments owed by any third party to applicant's or recipient’s children or any other person for whom applicant or recipient has legal authority to execute such an assignment.
(Emphasis added).