STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-298


INTERNATIONAL FIDELITY INSURANCE COMPANY

VERSUS

CHARLA DURHAM A/K/A CHARLA HOLSOMBACK



**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2015-0268
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

**********

**SHANNON J. GREMILLION**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Candyce G. Perret, Judges.


**AFFIRMED AS AMENDED.**

**W. Simmons Sandoz**
**Attorney at Law**
**P.O. Drawer 471**
**Opelousas, LA 70571-0471**
**(337) 942-8956**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Charla Durham**

**Stephanie Marie Ackal**
**Stephanie Ackal, LLC**
**1018 Harding Street, Suite 111**
**Lafayette, LA 70503**
**(337) 706-7844**
**COUNSEL FOR INTERVENOR/CROSS-APPELLANT:**
**Mortgage Electronic Registration Systems, Inc.**

**Brian W Arabie**
**Arabie Law Firm**
**P.O. Box 3004**
**Lake Charles, LA 70602**
**(337) 493-2000**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Gene Mayo**
**Carolyn Mayo**

**Reid A. Jones**
**Wiener, Weiss & Madison**
**P.O. Box 21990**
**Shreveport, LA 71120**
**(318) 213-9200**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**International Fidelity Insurance Company**

**David Durham**
**In Proper Person**
**1816 Blankenship**
**DeRidder, LA 70634**

**Ricky L. Moses, Sheriff of Beauregard Parish**
**In Proper Person**
**120 S. Stewart Street**
**DeRidder, LA 70634**
**(337) 462-2400**

**GREMILLION, Judge.**

The notion of avoiding bail obligations conjures images of desperate fugitives fleeing justice; the bondsperson avoiding those obligations would seem far more rare, yet that is apparently the backdrop on which this drama has played out. All parties to this action to make executory a foreign judgment and to execute upon the same are appealing the trial court's judgment.

## FACTS

Charla and David Durham purchased a piece of real estate in Beauregard Parish in June 2014. In December 2014, the Durhams entered into an agreement that was approved by the district court to dissolve their community property regime. Particularly relevant to this matter are Articles XVIII and XIX of the covenant, which provide:

### XVIII.

Charla Durham also acknowledges that her debt is her separate obligation. She further waives and denounces any interest she may have or may have acquired in the future in David Lynn Durham's separate property, including, but not limited to the immovable property described as Lot Three (3) of Harmony Hills Subdivision in Beauregard Parish, Louisiana which bears a municipal address of 1217 Harmony Lane; any interest from any assets or investments; any fruits of any of David Lynn Durham's separate property.

### XIX.

**DAVID LYNN DURHAM** will maintain his separate checking account at City Savings Bank (#1682814) as well as his separate Boise Credit Union account. He will keep any and all interest he has in his IRA's, 401K, retirement accounts, stocks, bonds or other assets that he had before the marriage. He will retain the immovable property described as Lot Three (3) of Harmony Hills Subdivision in Beauregard Parish, Louisiana, which bears a municipal address of 1217 Harmony Lane, as his separate property and retain the debt for the same as his own. He will further retain the 2013 Cadillac CTS and the 2014 Chevrolet Silverado as his separate property and shall retain all debt for the same. He will further retain all income attributable to him along with all fruits thereof.

In January 2015, International Fidelity Insurance Company obtained a judgment in New Jersey against Charla for $122,695.39, allegedly arising from Charla's activities as a bail bondsperson. International Fidelity obtained an April 2015 order in Louisiana recognizing the New Jersey judgment. When it learned of the dissolution of the Durhams' community property regime, International Fidelity filed a lawsuit to annul the dissolution in September 2015.

In December 2015, the Durhams jointly sold the property to the Mayos. The Mayos had borrowed the money to purchase the home from Mortgage Electronic Registration System, Inc. (MERS) and granted MERS a mortgage on the property to secure the loan. The Mayos and MERS had obtained a title opinion that opined that David Durham was the sole owner of the property.

In September 2016, the Durhams and International Fidelity reached a compromise in the suit to annul the community property regime dissolution. Thereafter, International Fidelity had the Beauregard Parish sheriff seize the property. To petition the court to enjoin the seizure and sale of the property, the Mayos and MERS intervened in the suit to recognize the New Jersey judgment. Additionally, the Mayos asserted a claim for damages for wrongful seizure of their property.

The trial court determined that because International Fidelity had not filed a notice of *lis pendens* into the mortgage records, the seizure of the property was improper. The Mayos were recognized as the owners of the property in question, subject to the mortgage in favor of MERS. The Beauregard Sheriff was permanently enjoined from proceeding with the sale. The trial court found that the demands of the Mayos and MERS in their intervention to permanently enjoin the seizure and sale and to declare that International Fidelity has no rights in and to the property, were rendered moot.

## ASSIGNMENTS OF ERROR

International Fidelity asserts that the trial court committed the following errors:

> 1. The District Court committed legal error in finding that Ms. Durham transferred her 50% interest in the Property to Mr. Durham in 2014 through the Postnuptial Agreement and/or Community Termination Judgment.

> 2. The District Court erred in considering testimony irrelevant to the purely legal issues to be decided and otherwise barred by the parol evidence rule.

> 3. The District Court erred to the extent it applied the public records doctrine as a bar against International Fidelity's rights in and to the Property.

The Mayos assign as error the trial court's ruling "to the extent that it does not expressly reserve [their] right to pursue their claim for damages and attorney fees caused by International Fidelity's wrongful seizure of their home." MERS asserts that the trial court erred in dismissing the intervention as moot and should have granted injunctive and declaratory relief to MERS and the Mayos.

Because a ruling in favor of International Fidelity would absolutely render the claims of the Mayos and MERS moot, we will address its assignments of error first.

## ANALYSIS

International Fidelity maintains that the postnuptial agreement between the Durhams did not effectively transfer ownership in Charla's community portion of the home to David. As noted above, Charla "waive[d] and denounce[d] any interest she may have or may have acquired in the future in [David's] separate property," including the house. David, in turn, "[would] retain the immovable property described as Lot Three (3) of Harmony Hills Subdivision in Beauregard Parish, Louisiana, which bears a municipal address of 1217 Harmony Lane, as his separate property and retain the debt for the same as his own."

3

The home was purchased during the Durham's marriage. There is no assertion in the record that it was separate property before the postnuptial agreement. Therefore, it was a community asset prior to the postnuptial agreement. Pursuant to La.Civ.Code art. 2457, International Fidelity was entitled to pursue satisfaction of Charla's obligation under the judgment from pre-termination assets of the community. Only the sale of the home to the Mayos could possibly extinguish that right. International Fidelity maintains that the home never ceased to be a community asset because the language of the postnuptial agreement was not sufficient to transfer ownership.

A transfer of immovable property must be in writing, either in authentic form or by act under private signature.[1] La.Civ.Code art. 1839.

> The ownership of an immovable is voluntarily transferred by a contract between the owner and the transferee that purports to transfer the ownership of the immovable. The transfer of ownership takes place between the parties by the effect of the agreement and is not effective against third persons until the contract is filed for registry in the conveyance records of the parish in which the immovable is located.

La.Civ.Code art. 517.

International Fidelity asserts that the jurisprudence has interpreted these articles as requiring that the writing constitute an "act translative of ownership." An act translative of ownership represents the owner's alienation of the thing as a whole, as opposed to granting partial enjoyment. *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.*, 10-2267 (La. 10/25/11), 79 So.3d 246.

The rules governing contractual interpretation are axiomatic. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd

---

[1] Though it must be noted parenthetically that the article does allow for an oral transfer that is recognized by the transferor when interrogated under oath.

consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La.Civ.Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La.Civ.Code art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La.Civ.Code art. 2049. And, lastly, "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050.

Applying these rules to the postnuptial agreement, we find that it constitutes an act translative of ownership of Charla's interest in the home. She renounced any interest in the property, and David retained the home as his separate property. Charla was conveying her interest in the property to David. International Fidelity's first assignment of error lacks merit.

International Fidelity's second assignment of error argues that, in allowing testimony that varied the terms of a written agreement, the trial court erred in violating the parol evidence rule.

> Testimony or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent or to prove that the written act was modified by a subsequent and valid oral agreement.

La.Civ.Code art. 1848. However, this action was not brought to enforce the obligation created by the postnuptial agreement. Therefore, the parol evidence rule does not apply.

In *Dawson v. Dawson*, 610 So.2d 917, 919 (La.App. 1 Cir. 1992), the first circuit held that the parol evidence rule does not apply in cases in which "the writing is collateral to the issue involved and the action is not based upon the writing." Thus, whether a document that purported to be a cash sale was actually a donation was collateral to the act of sale when the issue before the court was whether the property purportedly sold was characterized as community or separate property. Quite recently, a panel of this court quoted *Dawson* with approval in a matter involving the appropriate allocation of a lump-sum settlement of personal injury claims after the injured married couple were divorced. *Cazelot v. Cazelot*, 18-44 (La.App. 3 Cir. 6/27/18) (unpublished opinion).

Further, we have already determined that the postnuptial agreement is an act translative of ownership without considering the testimony of which International Fidelity complains. Therefore, even were we to agree with International Fidelity that the testimony should not have been adduced, that admission would amount to harmless error, as the testimony did not guide our determination that the agreement represents an act translative of ownership. The second assignment of error posited by International Fidelity lacks merit.

This brings the discussion to the real issue in this matter: did International Fidelity's failure to file a notice of *lis pendens* vitiate its right to seek enforcement of its judgment against the property? It does.

Louisiana Code of Civil Procedure Article 3751 plainly states:

> The pendency of an action or proceeding in any court, state or federal, in this state affecting the title to, or asserting a mortgage or privilege on, immovable property does not constitute notice to a third person not a party thereto unless a notice of the pendency of the action or proceeding is made, and filed or recorded, as required by Article 3752.

International Fidelity counters that the Mayos had actual knowledge of the pendency of the suit. Does actual notice matter?

In *Phillips v. Parker*, 483 So.2d 972 (La.1986), the supreme court was faced with a boundary action in which possessors under an act translative of title had obtained a parcel from a common ancestor of their neighbor, who demanded that they remove a fence that overlapped her property by thirteen feet. The possessors/defendants argued that they had possessed the disputed strip in good faith and under just title, and, thus, had acquired the property by ten-year prescription. The only issue before the court was whether the possessors/defendants were good faith possessors.

The possessors/defendants had obtained a title examination, and the attorney who conducted it failed to discover that the common ancestor had already conveyed a portion to the neighbor's ancestor in title. The trial court and court of appeal both held that because the possessors/defendants had obtained a title examination, they were precluded from claiming that they possessed in good faith.

The supreme court first discussed the public records doctrine:

> The fundamental principle of the law of registry is that any sale, mortgage, privilege, contract or judgment affecting immovable property, which is required to be recorded, is utterly null and void as to third persons unless recorded. Redmann, *The Louisiana Law of Recordation: Some Principles and Some Problems,* 39 Tul.L.Rev. 491 (1965). When the law of recordation applies, an interest in immovable property is effective against third persons only if it is recorded; if the interest is not recorded, it is not effective against third persons, even if the third person knows of the claim. This principle is traceable to the decision in *McDuffie v. Walker,* 125 La. 152, 51 So. 100 (1909), in which the court held that the plaintiff, as purchaser of immovable property by recorded act, was entitled to recognition as owner in a petitory action against the defendant who had purchased the property seven years earlier and had immediately gone into possession, but had not recorded the deed. In response to the defendant's argument that the plaintiff had knowledge of the prior unrecorded sale, the court reiterated its decision in *Harang v. Plattsmier,* 21 La.Ann. 426 (1869) that actual knowledge is not the equivalent of registry, which is absolutely required in order for the sale to affect third persons.

7

Thus, the law of registry does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded. The essence of the public records doctrine is that recordation is an essential element for the *effectiveness* of a right, and it is important to distinguish between *effectiveness* of a right against third persons and *knowledge* of a right by third persons. An unrecorded interest is not effective against anyone (except the parties). A recorded interest, however, is *effective* both against those third persons who have *knowledge* and those who do not have *knowledge* of the presence of the interest in the public records. From the standpoint of the operation of the public records doctrine, knowledge is an irrelevant consideration.

*Id.* at 975-76. (emphasis in original)(footnote omitted).

A scant three months later, the supreme court decided *Dallas v. Farrington*, 490 So.2d 265 (1986), in which it held that the plaintiffs' vendor's son, who then owned an adjoining estate, was not bound to deliver a servitude of passage to the plaintiffs that had been made a condition of the sale to the plaintiffs but was not included in the act of sale. Again, the absence of registry defeated actual knowledge the son may have had of his father's agreement to allow a servitude.

In *London Towne Condominium Homeowner's Ass'n. v. London Towne Co.*, 06-401 (La. 10/17/06), 939 So.2d 1227, the Louisiana Supreme Court reiterated its statement from *Phillips*, 483 So.2d 972, that "[w]hen the law of recordation applies, an interest in immovable property is effective against third persons only if it is recorded; if the interest is not recorded, it is not effective against third persons, even if the third person knows of the claim. . . ." *London Towne*, 939 So.2d at 1232 (quoting *Phillips*, 483 So.2d at 975). This is the pronouncement of the Louisiana Supreme Court, and we are bound to apply it unless and until it changes. *See Oliver v. Magnolia Clinic*, 11-2132 (La. 3/13/12), 85 So.3d 39. International Fidelity's third assignment of error lacks merit.

We next address the Mayos' assignment of error, which complains that the trial court erred in not expressly reserving unto them a right to pursue damages and

attorney fees for the wrongful seizure of the home.[2]  Louisiana law has long recognized the right of one whose property has been wrongfully seized to recover damages.  *See Moses v. Am. Sec. Bank of Ville Platte*, 222 So.2d 899 (La.App. 3 Cir. 1969).  In not addressing the issue of damages, the judgment's silence constitutes a rejection of that demand.  *See Desoto v. Desoto*, 04-1248 (La.App. 3 Cir. 2/2/05), 893 So.2d 175.  We find that this constitutes error and amend the trial court's judgment to specifically reserve unto the Mayos their right to pursue damages against International Fidelity.

Lastly, MERS contends that the trial court erred in dismissing its petition as moot.  The judgment in the matter stated, "**IT IS ORDERED, ADJUDGED AND DECREED** that Gene H. Mayo and Carolyn J. Mayo are declared to be the owners of the subject property, subject to the mortgage in favor of Mortgage Electronic Registration Systems, Inc. . . . ."  This declaration is insufficient, according to MERS, because it did not declare that International Fidelity has no rights in and to the property.

We agree that, for the sake of clarity, the judgment should have been more explicit in its declaration regarding International Fidelity's potential claims over the property.  Accordingly, we amend the trial court's judgment to declare that the Mayos own the subject property subject to the mortgage in favor of Mortgage Electronic Registration Systems, Inc., and free and clear of the judgment in favor of International Fidelity Insurance Company against Charla Durham, a/k/a Charla

---

[2] The Mayos' brief consists solely of their "reservation" of the right to assert a claim for wrongful seizure.  They offered no argument in support of this proposition.  They cited no authority.  Pursuant to Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4), we could deem this assignment of error abandoned.  Nevertheless, in the interests of justice, we will address this pursuant to La.Code Civ.P. art. 2164.

9

Holsomback. In all other respects, the judgment granted the relief MERS prayed for in its intervention.[3]

## CONCLUSION

The postnuptial agreement between the Durhams clearly evidenced intent to convey Charla's interest in the property to David. When International Fidelity sought to provoke an annulment of the agreement, it was required to file a notice of *lis pendens*; were the annulment granted, the judgment made executory in Louisiana would encumber the property. The law of registry requires that such a notice be filed. No exception is allowed for those who have actual notice of the potential encumbrance. The trial court erred in not reserving the Mayos' claim for damages for wrongful seizure. We amend the judgment to provide that the Mayos own the property free and clear of the judgment in favor of International Fidelity Insurance Company against Charla Durham, a/k/a Charla Holsomback.

All costs of this proceeding are taxed to International Fidelity Insurance Company.

**AFFIRMED AS AMENDED.**

---

[3] MERS prayed in pertinent part, "That after due proceedings are had, judgment be entered in favor of Intervenor and against International Fidelity Insurance Company making the preliminary injunction permanent, declaring that International Fidelity Insurance has no rights in and to the Property, and revoking the Notice of Seizure issued on October 26, 2016[.]"