STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1020

LYNDON G. DOYLE, ET AL.

VERSUS

ALLSTATE INSURANCE COMPANY, ET AL.

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2009-0179
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

************

PHYLLIS M. KEATY
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

Saunders, J., dissents with written reasons.

AFFIRMED.

Walter K. Jamison, III
Marjorie B. Breaux
Bryan E. Lege
Kraft Gatz Lane Benjamin, LLC
600 Jefferson Street, Suite 410
Lafayette, Louisiana 70501
(337) 706-1818
Counsel for Defendant/Appellee:
    National Union Fire Insurance

**P. J. Laborde, Jr.**
**David C. Laborde**
**The LaBorde Law Firm, L.L.C.**
**Post Office Box 80098**
**Lafayette, Louisiana  70598-0098**
**(337) 261-2617**
**Counsel for Plaintiffs/Appellants:**
    **Lyndon G. Doyle**
    **Charlotte Doyle**

**KEATY, Judge.**

Plaintiffs, Lyndon Doyle (Doyle) and his wife, Charlotte Doyle,[1] appeal a summary judgment granted in favor of Defendant, National Union Fire Mutual Insurance Company (National Union), on the basis that a waiver of uninsured motorist insurance was validly executed, thereby relieving National Union from liability.

**FACTS AND PROCEDURAL HISTORY**

On January 31, 2008, Aniece Smith rear-ended Doyle while he was driving a vehicle owned by his employer, Ecolab, Inc. (Ecolab). As a result of the collision, Doyle suffered a myriad of injuries to his back, shoulders, neck, and limbs, in addition to sprained muscles. At the time he filed his petition in the District Court, Doyle's medical bills totaled $15,283.69. Additionally, he was diagnosed with adhesive capsulitis,[2] and his doctor recommended a surgery estimated to cost at least $11,500.00.

Smith carried two insurance liability policies each with a limit of $10,000.00. Those policies were paid in full to Doyle. Ecolab was insured by National Union, and in addition to seeking full policy limits from Smith's carriers, Doyle sought full policy limits from National Union under the uninsured/underinsured motorist (UM) liability provision. National Union admitted that a policy covering Doyle existed but denied the availability of UM coverage due to a waiver signed by Ecolab's

---

[1]Charlotte Doyle joined in Lyndon Doyle's petition for damages claiming severe mental anguish and loss of consortium. She was not involved in the accident giving rise to Lyndon Doyle's injuries. When we refer to Doyle in the opinion we are only referring to Lyndon Doyle.

[2]Adhesive capsulitis is defined as "a global decrease in shoulder range of motion . . . referring to the actual adhesion of the shoulder capsule to the humeral head." It is usually painful at onset. Norman Cohen, M.D., Eric P. Gall, M.D. and Lori Siegal, M.D. *Adhesive Capsulitis: A Sticky Issue*, American Academy of Family Physicians, April 1, 1999 *available at* http://www.aafp.org/afp/990401ap/1843.html.

1

representative, John Spies, on February 4, 2003. A second waiver at issue in this appeal was signed by Spies on December 18, 2003.

Doyle filed a petition for damages on January 12, 2009. In his petition, he named five defendants: Allstate Insurance Company as Aniece Smith's liability insurer, Allstate Insurance Company as Doyle's UM insurer, Unitrin,[3] National Union Fire Insurance, and Aniece Smith.[4]

Doyle filed a motion for partial summary judgment against National Union on February 10, 2009, alleging that the UM waiver signed on February 4, 2003 was improperly executed and, therefore, invalid. The rule was set for March 15, 2010, and was continued to March 29, 2010 pursuant to an unopposed motion to continue filed by National Union. There is no indication in the record that a hearing on Doyle's partial summary judgment took place on March 29, 2010, nor does the record reflect that it was continued or reset.

National Union filed a cross motion for summary judgment on March 19, 2010, alleging that the UM waiver was valid, thereby precluding Doyle's recovery. National Union's motion for summary judgment was heard and granted on May 10, 2010.

Doyle appeals, claiming in a single, two-part assignment of error: that "[t]he trial court erred in denying Plaintiffs' Motion for Summary Judgment and granting Defendant's Motion for Summary Judgment, holding that there is no uninsured motorist coverage under National Union Fire Insurance Company of Pittsburgh, Pennsylvania's policy."

---

[3]A foreign insurance company; the petition does not specify whom they insured.

[4]All claims against Smith, Unitrin, and Allstate, in its capacity as insurer for both Smith and Doyle, were dismissed on March 20 and April 28, 2009.

For the following reasons, we affirm the trial court's judgment.

## DISCUSSION

### Summary Judgment

Summary judgment is a procedural tool "designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La.Code Civ.P. art. 966(A)(2). If the motion for summary judgment and supporting affidavits show that there is no genuine issue of material fact, the mover is entitled to a judgment as a matter of law. La.Code Civ.P. art. 966(C). A material fact is one whose "existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. In *Evans v. Automotive Casualty Insurance Co.,* 94-129, p. 3 (La.App. 3 Cir. 10/5/94), 643 So.2d 389, 391, *writ denied*, 94-2732 (La. 1/6/95), 648 So.2d 930 (citations omitted), we noted that "[a] 'genuine issue' is a 'triable issue.'" We further stated that "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes." *Id.* (citations omitted).

A granting of summary judgment by the trial court is reviewed by this court de novo. *Advance Prods. & Sys., Inc. v. Simon*, 06-609 (La.App. 3 Cir. 12/6/06), 944 So.2d 788, *writ denied*, 07-26 (La. 3/9/07), 949 So.2d 444. In doing so, we must "[view] the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant." *Id.* at 791 (quoting *Hines v. Garrett*, 04-806, pp. 1-2 (La. 6/25/04), 876 So.2d 764, 765-66 (per curium)).

3

***Denial of Doyle's Motion for Summary Judgment***

This issue is not before us. According to the record, on February 26, 2010, Doyle agreed to continue the hearing on his motion for summary judgment without date. The hearing was reset to March 29, 2010. There is no evidence in the record to support a conclusion that the hearing occurred or that it was continued and reset to another day. "[A]n appeal is from the judgment." *Parish of St. Charles v. Young*, 99-411, p. 3 (La.App. 5 Cir. 12/15/99), 750 So.2d 276, 278 (quoting *State v. Sonat Exploration Co.,* 27,592 (La.App. 2 Cir. 12/6/95), 665 So.2d 718, 722, *writ granted, judgment reversed on other grounds,* 96-443 (La. 4/19/96), 671 So.2d 933). The May 10, 2010 judgment being appealed reflects that the motion for summary judgment considered at the hearing was filed on behalf of National Union and does not indicate that the trial court considered cross motions for summary judgment at the hearing. Thus, this assignment of error is without merit.

***Grant of Defendant's Motion for Summary Judgment***

**UM waiver signed on February 4, 2003**

In his brief, counsel for Doyle contended that the waiver of UM coverage signed by Ecolab's representative on February 4, 2003 is invalid because it does not contain a policy number in the place designated by the commissioner of insurance and in accordance with *Duncan v. U.S.A.A. Insurance Co.,* 06-363 (La. 11/29/06), 950 So.2d 544[5] and because it does not contain the company name in the designated

---

[5]In *Duncan*, 950 So.2d at 551, the supreme court enumerated six factors that needed to be present on a UM waiver form to render the rejection valid:

(1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.

location according to bulletin number 98-01,[6] promulgated by the commissioner of insurance. At oral arguments, counsel for Doyle effectively withdrew his assertion that the February 4, 2003 waiver is invalid by stating that the first waiver complied with *Duncan* and that *Gingles v. Dardenne*, 08-2995 (La. 3/13/09), 4 So.3d 799, made it clear that the insurance company name need not be present on the form. Accordingly, we will treat this portion of Doyle's argument as withdrawn from our consideration.

**Second Waiver Signed on December 18, 2003**

Doyle's only assertion for our consideration is that a second waiver, signed on December 18, 2003, is invalid and supercedes the first, valid waiver because it was signed during the original policy term, not in conjunction with a renewal and not in conjunction with a change in coverage.

At trial, National Union admitted that the December 18 waiver was invalid but claimed that they did not have a copy of that waiver in their underwriting file for Ecolab. This assertion was corroborated by Lynn M. Boyle, assistant vice president and regional manager for the commercial casualty, risk management department of Chartis U.S.,[7] who stated in her deposition that the December 18 waiver was not in Ecolab's underwriting file. Doyle obtained the December 18 waiver from Marsh, USA, the independent broker for Ecolab.

John Spies, director of corporate risk management for Ecolab, stated in his deposition that he negotiated and secured insurance with National Union on behalf

---

[6]Bulletin 98-01 states: "For identification purposes, the company name must be placed at the lower left-hand corner . . . of the Form." *Duncan*, 950 So.2d at 551. The bulletin was created prior to the *Duncan* opinion and the supreme court did not address the company name in its enumeration of the requirements for effectuating a valid UM rejection.

[7]The Chartis hierarchy is as follows: AIG is the parent company to Chartis, and Chartis issues policies for various insurance companies including National Union.

5

of Ecolab in 2003 and in subsequent years and that he is the person who signs all requisite forms, including waivers, necessary for procuring insurance policies on behalf of Ecolab. He also stated that the renewal process begins a few months before a policy is set to renew and that he has discussions with his broker and with underwriters, fills out applications, and receives quotes in the month of December and makes a decision "several weeks before expiration." When asked why he would have signed two UM waivers in one year, he stated, "one form may have been for the 2003 year[8] and another form for the upcoming renewal."

National Union reiterated to this court, at oral argument, that the insurance policy was secured in February 2003 but dated back to December 31, 2002, and that the UM waiver signed in February 2003 was retroactive to December 31, 2002.

Doyle would have this court find that the second waiver was not signed pursuant to a renewal and thus supercedes the valid first waiver. In making this assertion, he relies on this court's opinion in *Alexander v. Estate of McNeal*, 10-66, p. 5 (La.App. 3 Cir. 6/30/10), 44 So.3d 338, 341, *writ denied*, 10-1807 (La. 10/29/10), 48 So.3d 1093, where we found that because the second UM waiver was signed only a few months after the initial waiver and because "[t]here is nothing in the record to indicate Mr. Dupar was called in to sign a renewal[,]" the second, invalid waiver superceded the first waiver, and UM insurance was in effect. That case is factually distinguishable from the instant case.

In *Alexander*, the insured signed waivers of UM coverage on two rejection forms, each containing different language, three months apart. The validity of the first waiver was disputed, but the second waiver was undeniably invalid. The

_____

[8]The 2003 policy year expired on December 31, 2003.

6

insurance company, in *Alexander*, argued that the second waiver was irrelevant since the first waiver was valid, and the trial court, at a motion for summary judgment, stated that although "there is strong statutory language indicating that regarding renewal the initial UM rejection stands," for an unknown reason, the insurance company wanted to have a second rejection form signed and wanted that form to have "the full force of law." *Id.* at 340-41. The trial court went on to state that "where the drafter of the contract, the drafter of the policy, the insurer compels for whatever reason the insured to come back in[,] [t]hat second document has to stand for something." *Id.* at 340.

On appeal, we agreed, finding that "[t]he insurer cannot pick and choose which one of the rejection forms to enforce" and that "[t]here is nothing in the record to indicate Mr. Dupar was called in to sign a renewal." *Id.* at 341. Thus, we concluded that because the two rejection forms were different in their wording and because the insured was called in to sign them only three months apart, the second waiver superceded the first. As the second waiver was invalid, we found that there was not a rejection of UM coverage.

The instant case involves two UM rejection forms, but unlike *Alexander*, the forms are identical. The first form was signed when Ecolab obtained insurance with National Union, but it was intended to relate back to the retroactive starting date of the policy, December 31, 2002. The second form was signed on December 18, 2003. National Union did not have the second form in its underwriting file; indeed, it was obtained by Doyle from Marsh, the independent broker. The testimonies we have explaining why the second waiver may have been signed are from John Spies who made an educated guess that the second waiver was signed in connection with an

upcoming renewal period and from Lynn Boyle who testified that "in the normal course of business something dated 12/18/03 would be in preparation for the '03 to '04 renewal of a policy."

This court clearly stated in *Rashall v. Pennington,* 08-1 (La.App. 3 Cir. 4/30/08), 982 So.2d 301, *writ denied,* 08-1543 (La. 10/10/08), 993 So.2d 1286 and *Stephenson v. Van Vleit*, 96-1407 (La.App. 3 Cir. 4/30/97), 693 So.2d 858, *writ denied*, 97-1431 (La. 9/19/97), 701 So.2d 174 that in cases of a renewal, a second, invalid form does not supercede an initial, valid waiver since the purpose of the second waiver is to reiterate the insured's intent to reject his or her UM coverage. Since a new waiver does not have to be signed each year when a policy is renewing without any changes, a second invalid waiver on a renewal does not supercede an initial, valid waiver. La.R.S. 22:1295; *see Rashall,* 982 So.2d 301.[9]

Lynn Boyle testified that National Union only sends new UM rejection forms to its insured when there is a change in the insured's limits or deductibles or in connection with a renewal. She testified that in the normal course of business, once a UM rejection form is signed and returned to Chartis, it is placed in the underwriting file, that there would not be additional UM rejection forms in the file unless the coverage or limits had changed, and that she did not have the December 18, 2003 waiver in her underwriting file.

John Spies testified that UM forms come to him either from National Union or from Marsh, and that the second rejection form was probably signed in connection with a renewal as the policy renewed every year on December 31. Counsel for Doyle

---

[9]*Rashall* references La.R.S. 22:680(1)(a)(i-ii) which was renumbered pursuant to Acts 2008 No. 415 § 1. The subject of La.R.S. 22:680 is now found in La.R.S. 22:1295.

stated that they received their copy of the second waiver from Marsh, not from National Union.

We conclude that the second waiver was signed in connection with a policy renewal; thus, *Alexander* does not apply to the instant case, and the second waiver does not supercede the first. Ecolab validly rejected UM coverage on the policy insuring Lyndon Doyle at the time of the accident in January 2008.

**DECREE**

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of National Union. Costs of this appeal are assessed to National Union Fire Insurance.

**AFFIRMED.**

9

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**10-1020**

**LYNDON G. DOYLE, ET AL.**

**VERSES**

**ALLSTATE INSURANCE COMPANY, ET AL.**


**SAUNDERS, Judge, dissenting**

Summary Judgment, while now favored in law, must still be based on competent evidence. In my view, an "educated guess" by a single witness is not enough to support summary judgment.

The record before us does not establish the reason that the second rejection was signed. It may or may not have been a renewal. This is a critical issue of fact and is unresolved. We should remand the case for a trial on the merits to resolve this issue. Accordingly, I respectfully dissent.