**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**22-124**
**consolidated with 21-816**

**RANDALL FRANCIS**

**VERSUS**

**TRAVELERS PROPERTY CASUALTY**
**COMPANY OF AMERICA, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2020-0851
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Chief Judge, John E. Conery, and Charles G. Fitzgerald, Judges.


**AFFIRMED.**

**Gregory P. Marceaux**
**Marceaux Law Firm**
**2901 Hodges Street**
**Lake Charles, Louisiana  70601**
**(337) 310-2233**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Randall Francis**

**Charles B. Cappel**
**Law Office of Charles B. Cappel, LLC**
**712 Division Street**
**Lake Charles, Louisiana  70601**
**(337) 491-6996**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Randall Francis**

**Brian T. Butler**
**Collin J. LeBlanc**
**Keogh, Cox & Wilson, Ltd.**
**Post Office Box 1151**
**Baton Rouge, Louisiana  70821**
**(225) 383-3796**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Travelers Property Casualty Company of America**

**Jacinda L. Denison**
**Plauché, Smith & Nieset, LLC**
**Post Office Drawer 1705**
**Lake Charles, Louisiana  70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Shelter Mutual Insurance Company**

**CONERY, Judge.**

Plaintiff Randall Francis sought recovery under his employer's underinsured/uninsured motorist coverage policy on the company truck he was driving after he was involved in a collision in Calcasieu Parish between the company truck and a vehicle driven by Billy Cornes. The trial court considered cross motions for summary judgment filed by Plaintiff and the insurer of the company truck, Travelers Property Casualty Company of America (Travelers), on the issue of whether Travelers obtained a valid UM coverage waiver from its insured, Plaintiff's employer. Following a hearing, the trial court granted judgment in favor of Plaintiff finding UM coverage under the policy. Travelers filed an appeal from the trial court's granting of the motion for partial summary judgment and an application for supervisory writ from the denial of Travelers' motion for summary judgment. For the following reasons, we maintain the trial court's judgments in favor of Plaintiff.

## FACTS AND PROCEDURAL HISTORY

This UM coverage dispute arises from a September 12, 2019 motor vehicle accident between Plaintiff and Billy Cornes, the opposing driver. The Ford F-150 truck driven by Plaintiff was owned by his employer, Targa Downstream Services, LLC (Targa), and insured by a commercial liability policy issued by Travelers. As a result of the accident, Plaintiff sustained serious bodily injury, including injuries requiring leg amputation. Plaintiff filed suit in February 2020, naming Travelers as a defendant in its alleged capacity as Targa's UM insurer.[1]

---

[1] Mr. Francis also named his personal UM coverage provider and the unopened succession of the other driver involved in the accident as defendants. These latter defendants are not relevant for purposes of this appeal and writ application.

In August 2021, Plaintiff filed a Motion for Partial Summary Judgment, asserting that Targa's $3 million policy provided UM coverage for his injuries due to Travelers' failure to obtain a valid UM rejection form.  Plaintiff noted that the UM selection form corresponding to the "10/31/18 to 10/31/19" policy year for the Targa Policy bears the signature of Julie Jackson, Targa's Vice-President of Risk Management in Insurance and its designee for insurance selection.  Plaintiff asserted, however, that the purported 2018 UM waiver produced by Travelers is not valid as it does not bear Ms. Jackson's *initials* by the selection indicating:  "I do not want UMBI Coverage.  I understand that I will not be compensated through UMBI coverage for losses arising from an accident caused by an uninsured/underinsured motorist." *See Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544.[2]

Rather, the subject 2018 UM selection form produced by Travelers includes a **check mark** by the selection box for a waiver of coverage, not Ms. Jackson's initials. Moreover, Ms. Jackson confirmed by deposition that she did not even place the check mark on the form, but that Targa's insurance broker did so before it was sent to Ms. Jackson for signature, initialing, and dating.  Plaintiff submitted email

_____

[2] In *Duncan*, the supreme court identified six tasks required for a valid rejection or selection of UM Coverage.  The Commissioner of Insurance thereafter released Bulletin No. 08-02 which included a revised UM selection form.  This court has recognized that the revised UM selection form—like the ones used in this case—requires the performance of the following five tasks in order to waive UM coverage:

> 1) initialing the selection or rejection of UMBI coverage; 2) if lower limits are selected, filling in the amount of coverage selected; 3) signing the name of the insured or legal representative; 4) printing the name of the insured or the legal representative; and 5) filling in the date the form was completed.

*Barras v. Cardinal Servs., LLC*, 19-530, p. 15 (La.App. 3 Cir. 4/1/20), 297 So.3d 877, 888, *writ denied*, 20-00978 (La. 11/04/20), 303 So.3d 631.  Jurisprudence continues to refer to the required tasks as the *Duncan* factors.  This matter involves only the initialing requirement.

2

correspondence from the broker to Ms. Jackson confirming Ms. Jackson's account.[3] Travelers conceded that the 2018 form is invalid for purposes of a waiver.[4]

Travelers thereafter filed a cross Motion for Summary Judgment, also maintaining that no genuine issues of material fact remain and further seeking a dismissal of Plaintiff's claim against it. While Travelers conceded that the uninitialed 2018 selection form is invalid for purposes of waiver, it instead relied on the original, 2011 UM waiver form, which bears Ms. Jackson's initials by the waiver selection and otherwise satisfies the *Duncan* requirements. Travelers contended that from 2011 to the date of the subject accident, Travelers did not issue a new policy to Targa nor did Targa change the liability limits. Rather, according to Travelers, the policies after 2011 were merely renewals and, thus, "the 2011 waiver defeats plaintiff's claim for UMBI benefits against Travelers by dictate of La.R.S. 22:1295(1)(a)(ii)[.]" That provision indicates that changes in a policy, other than changes in the limits of liability, "do not create a new policy and do not require the completion of new uninsured motorist selection forms." La.R.S. 22:1295(1)(a)(ii). Travelers also relied on appellate court jurisprudence indicating that resort may be

___

[3] In an October 23, 2018 email, Mary Oliver of Marsh Wortham Insurance, forwarded UM selection forms to Ms. Jackson for completion stating, in part, that:

> As in the past, *we marked up the forms to assist with Targa's completion and execution*. Enclosed are the following:
>
> 1.    Helpful Hints (state options) and the Travelers cover letter
>
> 2.    UM/UIM Election Forms for states that require signed forms effective 10/31/18 *with selections checked based upon Targa's prior elections*.

(Emphasis added.)

[4] Plaintiff further references the fact that during discovery, Travelers produced multiple versions of the 2018 UM selection form, including one bearing the initials "JJ" on the UM waiver selection box. Travelers, however, later admitted that its own employee inserted the initials on that version of the 2018 form. As the trial court noted at the hearing, "it has no significance to this issue before the Court today."

made to an earlier, valid waiver if a subsequent waiver is deficient. *See, e.g., Doyle v. Allstate Ins. Co.*, 10-1020 (La.App. 3 Cir. 3/2/11), 58 So.3d 606, *writ denied*, 11-0677 (La. 5/20/11), 63 So.3d 980.

Plaintiff challenged Travelers' reliance on the waiver contained in the 2011 UM selection form, citing the supreme court's recent opinion in *Baack v. McIntosh*, 20-1054 (La. 6/30/21), 333 So.3d 1206. In *Baack*, as discussed in more detail below, the insured, JBS, increased the liability limits of its pre-existing liability policy with its insurer, Zurich, in 2011 and validly rejected UM coverage at that time. On annual renewal, Zurich provided new UM selection forms. JBS's representative signed and dated the UM selection forms, but, as in this case, failed to initial the waiver selection to select UM coverage with limits lower than the policy's bodily injury limits. *Id.*

While Zurich argued that it could rely on the earlier, 2011 waiver, the supreme court rejected that position. *Baack*, 333 So.3d 1206. The supreme court pointed out that although no new UM selection form was required to be completed at the time of renewal, in fact, Zurich sent new forms to JBS upon renewal and, in turn, TBS submitted new UM forms. While TBS's representative signed and dated the forms, she did not initial them. *Id.* The supreme court explained that the "plain language" of La.R.S. 22:1295 dictates that such a "failure to initial any of the options available on the UM form necessarily results in statutory UM coverage." *Id.* at 1213-14. Given that mandate, Zurich could not rest on JBS's earlier, valid waiver or JBS's intent to thereafter maintain the waiver of UM coverage. Rather, had Zurich suspected that "the failure to make a selection on the forms was a mistake, it was incumbent on Zurich to follow up with JBS to make any necessary corrections." *Id.* at 1213. As Zurich did not do so, the supreme court maintained the court of appeal's determination that UM coverage existed at the time of the subject accident. *Id.*

4

In response to Plaintiff's position, Travelers argued that *Baack* is inapplicable to the present situation. It noted that the supreme court specifically remarked that the *Baack* case did not involve a matter of "minor mistake or omission." *See Baack*, 333 So.3d at 1214. Travelers argues that this case does involve such a minor mistake or omission. Travelers pointed to the fact that JBS failed to initial the UM selection form on three consecutive renewals in *Baack*. However, in this case, on the single UM selection form returned after 2011, Targa expressed an affirmative desire to maintain the waiver. In particular, Travelers noted that the box to reject UM coverage was checked and, furthermore, Ms. Jackson explained by deposition and affidavit that Targa never sought UM coverage. Given those circumstances, Travelers argued "there are no facts which would support any finding by a trier of fact that the insured intended UMBI coverage."

Plaintiff and Travelers presented their cross motions for summary judgment to the trial court with a substantial evidentiary record, including the subject policies and UM waiver forms. Following a hearing, the trial court ruled in favor of Plaintiff, rejecting Travelers' attempt to factually distinguish *Baack* on the basis of the single "check mark on the UM rejection line in the 2018" UM selection form. Rather, the trial court remarked that it was not a distinction that makes a legal difference under the reasoning of *Baack*. Accordingly, the trial court granted Plaintiff's motion for partial summary judgment, finding that the Travelers policy provides up to $3 million of UM coverage. The trial court denied Travelers' cross motion for summary judgment. The trial court designated the judgment as final for purposes of La.Code Civ.P. art. 1915.

Travelers appealed the granting of the partial summary judgment in favor of Plaintiff and filed an application for supervisory writ from the denial of its cross

5

motion for summary judgment. This court thereafter granted Travelers' motion to consolidate the matters for consideration. We discuss both collectively herein and render dispositive language in the writ application under separate cover. *See Francis v. Travelers Prop. Cas. Co. of Am.*, 21-816 (La.App. 3 Cir. _ / _/22), _ So.3d _.

## ASSIGNMENTS OF ERROR

By its appeal, Travelers assigns the following as error:

1. The Trial Court's ruling failed to adhere to the express language of La. R.S. 22:1295(1)(a)(ii).

2. The Trial Court's ruling misapplied or disregarded the rules of statutory construction set forth by the Civil Code and the governing law of Louisiana.

3. The Trial Court erred when it established a new legal rule in Louisiana that even minor mistakes or omissions in a Louisiana UM waiver form negates all prior, valid UM waivers in contravention of La.R.S. 22:1295(1)(a)(ii) and controlling case law.

4. The Trial Court erred when it failed to follow controlling Third Circuit cases which hold that a prior, valid UM waiver will govern when there is a minor error or mistake in a subsequent UM waiver form.

5. The Trial Court erred when it misapplied *Baack* and disregarded express language from the Supreme Court's decision which expressly limited the Court's holding only to cases where there was an overt act on the part of the insured to affirmatively select UM coverage.

6. The Trial Court erred when it failed to give effect to a valid 2011 UM waiver in contravention to settled law and La. R.S. 22:1295(1)(a)(ii).

7. The Trial Court erred when it granted the "Cross Motion" for Partial Summary Judgment of plaintiff.

(Footnote omitted.) Travelers echoes the substance of these arguments in its writ application.

6

# LAW AND DISCUSSION

## *Summary Judgment*

Louisiana Code of Civil Procedure Article 966(A)(3) provides that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."  With regard to the applicable burden of proof, Article 966(D)(1) provides:

> The burden of proof rests with the mover.  Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense.  The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Turning to review of the trial court's rulings on the parties' respective motions for summary judgment, we are mindful that an appellate court applies the *de novo* standard of review using the same criteria applied by the trial court.  *See Jenkins v. Arbors on the Lake Apartments*, 21-01662 (La. 3/22/22), 334 So.3d 746.

## *Louisiana Revised Statutes 22:1295(1)(a)(ii)*

Louisiana Revised Statutes 22:1295 provides the statutory basis for UM coverage in Louisiana and mandates UM coverage equal to the liability limits of an automobile liability policy.  An insured may, however, reject UM coverage, select lower limits of UM coverage, or select economic-only coverage.  La.R.S. 22:1295(1)(a)(i).  The insured must do so "in the manner provided in Item (1)(a)(ii) of this Section."  *Id.*  Travelers' foundational argument stems from that latter provision.

Louisiana Revised Statutes 22:1295(1)(a)(ii) sets forth the prescribed form for UM selection as follows:

> Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.

Likewise, pertinent in this case, La.R.S. 22:1295(1)(a)(ii) further indicates that:

> A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. *The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued* to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance.

(Emphasis added.)

Travelers contends that the language of this provision is "crystal clear" in providing that a new UM waiver is required *only* when a new insurance application is made or the limits of liability are changed. As neither of those circumstances is present in this case, Travelers suggests that the trial court erred in failing to apply both the language of the statute and rules for statutory interpretation. *Citing* La.Civ.Code art. 9; La.Civ.Code art. 11. Travelers maintains that the trial court was required to determine that the 2011 UM waiver remains valid for the life of the policy as a matter of law.

Travelers accurately identifies that the 2011 UM waiver satisfied the *Duncan* factors and that La.R.S. 22:1295(1)(a)(ii) affirmatively indicates that the completion of a new selection form is not required upon renewal. Those observations are unquestioned.

Travelers' argument does not, however, account for the fact that the supreme court has differentiated La.R.S. 22:1295's statement that *an insured is not required to complete a new UM selection form at the time of renewal* with the circumstance *where an insured has, in fact, submitted a new UM selection form at the time of renewal*. That differentiation is at the core of *Baack*, with the supreme court repeatedly contrasting the statute with the fact specific question before it.

The significance of that differentiation is reflected in the supreme court's identification of the pertinent inquiry as "whether an insured's initial uninsured/underinsured bodily injury ("UM") coverage waiver remains valid where, upon consecutive renewals, *the insured submitted new signed and dated UM forms without initialing the blanks provided to reject UM coverage*." *Baack*, 333 So.3d at 1209 (emphasis added). The supreme court thereafter specifically referred to La.R.S. 22:1295 in explaining that "*Based on our interpretation of the UM statute*, we find such a subsequently submitted form changes the prior rejection and operates to provide UM coverage." *Id.* (emphasis added).

The supreme court began its analysis by identifying the parameters of La.R.S. 22:1295 within the context of the facts before it, explaining that after JBS's 2011 UM waiver, "Zurich sent UM forms to JBS yearly *even though they were not legally required*." *Baack*, 333 So.3d at 1213. (Emphasis added.) Thereafter, "[JBS's representative] executed UM forms three times (2012, 2013, and 2014) before the accident without making a selection rejecting UM coverage and each time Zurich

9

issued the insurance policies without objection, request for clarification, or comment." *Id.* at 1213. The supreme court determined that JBS's failure to initial any of the options available on the UM selection form "necessarily results in statutory UM coverage." *Id.* at 1213-14.

Such a result was required, the supreme court explained, as La.R.S. 22:1295(1)(a)(ii) explicitly provides that an insured may change an initial rejection of UM coverage "by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance." The form provides only four selections, none of which allow an insured to actively select UM coverage on the form.[5] The supreme court reasoned that, "[t]hus, the *only* way to 'select' UM coverage on the form is to not initial any of the provided choices. *Under the statute, a signed and dated UM form with no selection equates to a selection of UM coverage.*" *Id.* at 1212 (emphasis added).

As in this case, Zurich sent JBS the UM form at the time of renewal, and the insured, JBS, failed to initial the selection form. The supreme court explained that Zurich "should have known that signing and submitting these forms could have specific legal consequences. If Zurich believed the failure to make a selection on the forms was a mistake, it was incumbent on Zurich to follow up with JBS to make any necessary corrections." *Baack*, 333 So.3d at 1213 (footnote omitted). In so stating, the supreme court quoted *Gray v. American National Property & Casualty Co.*, 07-1670, pp. 15-16 (La. 2/26/08), 977 So.2d 839, 849-50, for the proposition that "the insurer [has] both the authority and the opportunity to assure that the UM

---

[5] The supreme court related the four choices as: "[1] UMBI coverage at lower limits than liability coverage; [2] economic-only coverage with same limits; [3] economic-only UMBI coverage at lower limits; or [4] no UMBI coverage." *Baack*, 333 So.3d at 1212.

selection form [is] completed properly . . . . The insurer, not the insured, has the responsibility of assuring that the form is completed properly."

The supreme court's reasoning undercuts Travelers' position that the trial court's application of *Baack* is contrary to the clear wording of La.R.S. 22:1295(1)(a)(ii). Rather, the supreme court interpreted the UM statute in light of the facts before it. *Baack*, 333 So.3d 1206. As indicated by the hearing transcript, the trial court identified the facts in the present case to be substantially similar.

Significantly, in this case, Travelers required the execution of the UM selection waiver form at the time the policy was renewed in 2018, despite the fact that it was not required to do so. Its insistence that Targa complete the form is well established in the record. First, Targa's Vice-President of Risk Management in Insurance, Ms. Jackson, testified that Targa's insurance broker, Marsh Wortham, annually forwarded a UM selection packet for review and completion prior to the time of renewal. The UM selection packet included forms for each state covered by Targa's policy.[6]

---

[6] Ms. Jackson explained as follows on questioning by Plaintiff's counsel:

Q. Okay. On the - - on the yearly renewals that you told us about, it looks like Targa will make UM selections on a yearly basis?

A. It depends on which states require it yearly. Some states, they don't make us do it every year but some states do.

Q. And who is "they" that makes you do this?

A. I guess it's the carrier, whoever the carrier is, be it Travelers or Chubb now, would be the ones to say, okay, these are the forms that you need to fill out for these specific states that require an annual election, but not every state requires an annual election.

Q. So the - - whether or not a UM selection has to be made, that's not a decision that Targa would make?

A. No.

Q. It would be something that's told to Targa by the insurance company?

Plaintiff further submitted the corresponding October 23, 2018 email from Marsh Wortham's employee, Mary Oliver, by which Ms. Oliver informed Ms. Jackson that Travelers mailed the UM selection packet and its cover letter to Targa in July, 2018. Ms. Oliver advised that the forms were "presented for signature" but were "only for those states that require completion of a new election form." Ms. Oliver did not advise that the Louisiana UM form must be initialed but, to the contrary, advised that: "As in the past, *we marked up the forms to assist* with Targa's completion and execution." (Emphasis added.) Ms. Jackson confirmed that Marsh Wortham placed the checkmark on the UM selection form and that no one initialed the form.[7]

---

A. In terms of which states require an annual election.

Q. Correct.

A. Yes.

[7] In reviewing the 2018 UM selection form at her deposition, Ms. Jackson acknowledged signing and dating the form, but explained as follows regarding the checkmark on questioning by Plaintiff's counsel:

Q. And then under No. 4 where it says, I do not want UMBI coverage, there's a checkmark but there's no initials.

A. Yes, they - - they never instructed me that I had to initial.

Q. Okay.

A. We just always checkmarked everything.

Q. Okay.

A. They checkmarked it.

Q. And they being Marsh checkmarked it?

A. Yes.

Q. That was not a check put by you?

A. No.

As referenced in Ms. Oliver's email, the correspondence included Travelers' July 2, 2018 cover letter advising Targa:

> Enclosed are those forms reflecting the legal requirements currently in effect, relating to primary Uninsured/Underinsured Motorists Coverage which either the law dictates that we must provide you annually or which have been modified since your most recent election as a result of a change in the law or the interpretation thereof. We strongly recommend that you complete all of these forms as set forth herein even though you have previously made elections on other forms reflecting the legal requirements in effect at that time.
>
> . . . .
>
> We are forwarding these forms approximately ninety (90) days prior to the renewal date of your policy for your review and elections. If you want these elections to apply as of the effective date of your renewal policy, it is important you return completed forms in a timely manner, utilizing the date in which you wish your elections to be effective. PLEASE NOTE, if we receive your elections within ninety (90) days before or thirty (30) days after your renewal date, your elections will be effective as of the renewal date of the policy. If we receive them more than thirty (30) days after the renewal date of your policy or the signature date, your elections will be effective on the date the forms are received by us. Until then, your prior elections will apply to the extent they are in compliance with the legal requirements in effect at this time. *Where no elections have been made, we will be required to issue the policy with the mandatory single limits, where available.*

(Emphasis added.)

Finally, the Travelers' UM selection packet included two pages of "Helpful Hints" providing "Important information for completing the Selection forms." The two-page document classifies Louisiana as a "Policy Limits Default State[]" and a "State[] which allow[s] you to reject UM." Specific to Louisiana, the "Helpful Hints" instructed Targa that:

- You must **INITIAL** your selection for it to be a properly executed form.

- Effective 01/01/10 the Minimum Financial Responsibility limits is $30,000 CSL or $15,000/30,000 split limits.

- The Resolution form has recently been withdrawn and is not a required form as noted in the cover letter.

Finally, the "Helpful Hints" more generally advised that: "**<u>Statutory mandatory limits</u> may apply for any designated contradictory states <u>until we received [sic] properly executed forms from you.</u>**" (Emphasis original.)

As shown above, Travelers both provided the UM form to Targa on renewal and instructed Targa to complete that form. Although Marsh Wortham did not advise as to the necessity of initialing the UM selection form, Travelers specifically advised that initialing was required for proper execution and that, absent proper execution, statutory mandatory limits "may apply." Like Zurich in *Baack*, Travelers "should have known that signing and submitting these forms could have specific legal consequences." *Id.* at 1213. Travelers thereafter received the *uninitialed* UM selection form from Targa. Had it believed that the failure to so initial was a mistake, the onus was on Travelers to seek "any necessary corrections" so as to bring the UM selection form into accord with *Duncan* and the instructions provided both by the UM selection form itself and with Travelers' own instructions. *Id.* Like Zurich in *Baack*, Travelers failed to do so in this case.

### *Affirmative Choice to Select UM Coverage*

As it argued before the trial court, Travelers attempts to differentiate this matter from *Baack* in noting that JBS, the insured in *Baack*, failed to reject or even attempt to reject UM coverage for several years.[8] Travelers asserts that: "The *Baack* Court interpreted the act of signing and dating multiple UM waiver forms—with no

---

[8] While JBS failed to initial the UM selection forms in 2012, 2013, and 2014, we observe that the supreme court referred "specifically" to the "2014 form" as having been part of the Zurich policy in effect at the time of the accident. *Baack*, 333 So.3d at 1214.

14

attempt to reject UM coverage—as an affirmative choice by the name insured to select UM coverage."

As recognized by the trial court, however, the supreme court in *Baack* did not state that JBS's failure to initial the UM waiver form was an "affirmative act" of choosing UM coverage; nor did it find that JBS made such an affirmative choice. Neither the circuit opinion nor the supreme court's opinion in *Baack* suggests that the insured actually sought to acquire UM coverage after its earlier rejection thereof.

The supreme court instead analyzed La.R.S. 22:1295, as well as the Commissioner of Insurance's selection form, finding that by JBS returning an uninitialed form, it did "exactly what *is statutorily required* to change its prior rejection of UM coverage." *Baack*, 333 So.3d at 1214 (emphasis added.)[9] *Baack* accordingly addresses UM coverage by statutory presumption resulting in that case from *an absence* of action. *See* La.R.S. 22:1295(1)(a)(ii)("*A properly completed and signed form* creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.") (Emphasis added.) After the return of the uninitialed form in *Baack*, Zurich failed to seek clarification of the form. *Baack*, 333 So.3d 1206. In light of that series of occurrences, the supreme court stated only that JBS's "2014 form was part of the Zurich policy in effect at the time of the accident and clearly meets all the statutory requirements to change JBS's 2011 rejection of UM coverage." *Id.* at 1214.

---

[9] While not pertinent in this case, the supreme court in *Baack* found no merit in Zurich's reliance on La.R.S. 22:1295(1)(b) in arguing that there could be no UM coverage under its policy because JBS had not submitted a written request to revoke its previous UM waiver. The supreme court explained that Paragraph (1)(b) instead simply allows an insured to increase its UM limits by written request. Zurich's interpretation was determined to be "contrary to the clear wording of La.R.S. 22:1295(1)(a)(ii)." *Baack*, 333 So.3d at 1213.

***"Minor mistake or omission"***

In a further attempt to distinguish this matter from *Baack*, Travelers points out in this case that the supreme court in *Baack* expressly provided that the matter before it was "not a case where a minor mistake or omission on the UM form occurred." *Baack*, 333 So.3d at 1214. Travelers, in turn, characterizes Targa's failure to initial the 2018 UM waiver in this case as a "minor mistake or omission," stating:

> In 2011, Targa completed a UM waiver form which fully satisfied the "*Duncan*" factors. Targa did not execute any other Louisiana UM waiver form from 2011 until 2018 when it placed a check on the form consistent with its desire not to select UM. In the Trial Court, the evidence established without contradiction that Targa never paid for Louisiana UM, never desired Louisiana UM, and, importantly, affirmatively acted to waive Louisiana UM coverage at all times. When, as here, a subsequent waiver form is invalid *because of a minor mistake or omission,* a party such as Travelers properly relies upon the validity of an earlier valid UM waiver.

(Emphasis added.)

Travelers' characterization fails in a number of respects. First, Travelers' argument does not account for the fact that the supreme court *contrasted* the failure to initial the UM selection form with a minor mistake or omission. More importantly, Targa's "desire" to continue to waive UM coverage is an inappropriate consideration.

The supreme court notably instructed in *Baack* that an insurer cannot rely on an insured's intent—doing so in the same paragraph before its statement regarding minor mistake or omission—as follows:

> The plain language of the UM statute dictates that the failure to initial any of the options available on the UM form necessarily results in statutory UM coverage. "In directing the commissioner of insurance to prescribe a form, the legislature gave the commissioner the authority to determine what the form would require." *Duncan*, 06-0363, pp. 12-13, 950 So.2d at 552. "Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver." *Id.*, 06-0363, p. 14, 950 So.2d at 553; *Cadwallader* [*v. Allstate Ins. Co.*, 02-

1637, p. 4, 848 So.2d 577,] 580 ("Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."); *see also Washington v. Savoie*, 92-2957 (La. 4/11/94), 634 So.2d 1176, 1180 ("public policy precludes reformation of . . . UM coverage when the change adversely affects the rights of third persons insured under the policy to recover damages under the UM coverage provisions before the change"). This is not a case where a minor mistake or omission on the UM form occurred. Rather, the forms signed by [JBS's representative] in 2012, 2013, and, specifically, 2014 demonstrate that JBS did exactly what is statutorily required to change its prior rejection of UM coverage.

*Id.* at 1213-14. *See also Higginbotham v. USAgencies Cas. Ins. Co.*, 17-491, p. 11 (La.App. 3 Cir. 6/13/18), 247 So.3d 916, 923 ("The intent of the parties is quite simply irrelevant where a UM form does not meet the requirements of Louisiana law[.]"), *writ denied*, 18-1217 (La. 10/29/18), 254 So.3d 1213.

Moreover, Travelers' own instruction to Targa regarding the critical nature of "initialing" the selection form undermines its present argument that the insured's failure to do so is minor in nature. Instead, Travelers specifically brought the initialing requirement to Targa's attention. Conspicuously, the "Helpful Hints" included in Travelers' renewal packet instructed that: "You must **INITIAL** your selection for it to be a properly executed form." (Emphasis in the original.) It warned on the same document that:

> **This insert does not constitute any guarantee of coverage. Properly executed forms are required.** If there is a contradictory selection made for any state(s), a copy of the original signed application(s) will be returned. A blank application will be attached for any that need clarification. **Statutory mandatory limits may apply for any designated contradictory states until we received [sic] properly executed forms from you**."

(Emphasis in the original.)

Finally, the mandatory nature of the initialing task is also identifiable on the UM selection form forwarded by Travelers as it instructs the insured to "initial" one

17

of the four options available and further provides that: "The choice indicated *and initialed* on this form will apply to all persons and/or entities insured under this policy." (Emphasis added.) This requirement is delineated in the Commissioner of Insurance's Bulletin No. 08-02, which was provided to insurers at the time the form was created and is contained in this record. The bulletin provides, in part:

- The following tasks must be completed by the insured:

  - His/Her signature
  - His/Her printed name to identify his/her signature
  - The date the form is completed
  - *Initials to select/reject UMBI coverage prior to signing them.*

(Emphasis added.) *See also Duncan*, 950 So.2d 544; *Barras*, 297 So.3d 877. Yet, armed with this knowledge and its own instructions to the insured, Travelers failed to seek clarification or a corrected form after Targa returned the 2018 UM selection form uninitialed. Travelers could not merely rely upon Targa's intent at that point as "'[t]he insurer, not the insured, has the responsibility of assuring that the form is completed properly.'" *See Baack*, 333 So.3d at 1213 (quoting *Gray*, 977 So.2d at 850).

### Circuit Jurisprudence

Travelers also points out that the supreme court did not explicitly overrule circuit jurisprudence Travelers advances for the proposition that an insurer may rely on a previously executed UM waiver form. *See Doyle*, 58 So.3d 606; *McElroy v. Continental Cas. Co.*, 43-868 (La.App. 2 Cir. 6/24/09), 15 So.3d 377; *Rashall v. Pennington,* 08-0001 (La.App. 3 Cir. 4/30/08), 982 So.2d 301, *writ denied*, 08-1543 (La. 10/10/08), 993 So.2d 1286; and *LeBlanc v. Guntenaar*, 07-904 (La.App. 5 Cir. 3/25/08), 984 So.2d 136, *writ denied*, 08-0841 (La. 6/6/08), 983 So.2d 923.

18

Travelers contends that the trial court erred in failing to account for that jurisprudence in its application of *Baack*. The trial court, however, explained that Travelers' argument would have the court "ignore *Baack* because there's no real true distinction factually on the significant point in *Baack* versus this case."

The trial court also pointed out that, like here, the insurer in *Baack* required the insured to complete a new UM selection form.[10] That fact pattern was not only addressed by the supreme court but expressly remarked upon by this court's underlying opinion in *Baack v. McIntosh*, 19-657 (La.App. 3 Cir. 7/29/20), 304 So.3d 881. In fact, the panel referenced the insurer's demand for the completion of a new form in differentiating it from *Rashall*, one of the circuit opinions cited by Travelers. The panel explained that "[w]hile we agree with our holding in *Rashall*, we reach a different result *under the facts before us*." *Id.* at 896. (Emphasis added.) *See also Hart v. Mabou*, 21-28 (La.App. 3 Cir. 6/23/21), 323 So.3d 939, *writ denied*, 21-1479 (La. 12/21/21), 329 So.3d 826.

Travelers also suggests that *Hughes v. Zurich American Insurance Co.*, 13-2167 (La.App. 1 Cir. 8/20/14), 153 So.3d 477, *writ denied*, 14-2220 (La. 1/9/15),

---

[10] Travelers' counsel suggested at the hearing that this matter differs from *Baack* in that it only sent a new UM selection form to Targa in 2018, whereas Zurich made annual demand on its insured in *Baack*. When the trial court noted that Travelers "sent a policy every year to Targa[,]" Travelers' counsel confirmed that it did so, "but not with the UM." The trial court moved quickly through Travelers' attempt to distinguish this matter on that basis, responding only that: "Okay. They did in 2018."

The trial court correctly recognized that the single demand for a new UM selection form does not differentiate this matter from *Baack*. As stated above, the supreme court recognized that, although Zurich delivered annual forms to its insured in *Baack*, the supreme court noted that it was the final, 2014 UM form that attached to the policy in place at the time of the accident. Furthermore, in this case, the frequency with which Travelers provided UM selection forms to Targa is unclear. Ms. Jackson explained that the UM selection forms were delivered on an annual basis. The email correspondence from Marsh Wortham suggests the same. As this matter is resolved purely with regard to the 2018 UM selection waiver form, any inconsistency in the account does not create a genuine issue of material fact.

157 So.3d 1107 is persuasive under the facts of this case as the first circuit determined that the insured's failure to initial a UM form on renewal does not equate to a selection of UM coverage in light of the insured's earlier, valid UM waiver. The supreme court in *Baack*, however, plainly rejected that reasoning and instead quoted from Judge Pettigrew's dissent in *Hughes* by which he explained that the insurer demanded the completion of a new UM selection form but that the insured failed to initial its intent to waive UM coverage. Judge Pettigrew reasoned that the insured therefore failed to reject UM coverage and, by law, the policy provided UM coverage. After quoting that dissent, the supreme court explained in *Baack* that "[t]his is exactly what happened in this case." *Baack*, 333 So.3d at 1213 n.4. Given the common facts in this case, Travelers' continued adherence to *Hughes* is, at best, in tension with *Baack*.

In light of the applicability of *Baack*, we find no merit in Travelers' position that the trial court in this case was required to account for the circuit jurisprudence relied upon by Travelers. The trial court instead correctly observed that to rely on the jurisprudence cited by Travelers "would be to ignore *Baack*[,]" an opinion of a superior court. *See Oliver v. Magnolia Clinic*, 11-2132, p. 7 (La. 3/13/12), 85 So.3d 39, 44 ("[T]rial courts and courts of appeal are bound to follow the last expression of law of the Louisiana Supreme Court."). Explaining that there is "no real true distinction factually in *Baack* versus this case," the trial court observed that "there's a new UM form. Travelers sent it to Targa. Targa signed it, sent it back. It wasn't done in a way that would properly reject UM coverage, just like in *Baack*. And that has legal consequences. That's why they cited [Judge] Pettigrew's dissent in the early case."

20

Finding no error in the trial court's observations and application of the law to the facts of this case, we affirm the trial court's rulings. Like the trial court, we do not speculate as to the supreme court's intent as to the continuing persuasiveness of the earlier circuit jurisprudence advanced by Travelers. Rather, "[t]he Supreme Court of this State is not required to ferret out all previously decided cases of the intermediate appellate courts of the state in conflict with a decision being announced and specifically overrule them." *Helverson v. Rapides Par. Police Jury*, 391 So.2d 516, 519 (La.App. 3 Cir. 1980), *writ denied*, 396 So.2d 1325 (La.1981).

By decree below and by writ ruling in the consolidated matter, we maintain the trial court's decision rendering partial summary judgment in favor of plaintiff and its denial of Travelers' motion for summary judgment.

## DECREE

For the foregoing reasons, we affirm the trial court's judgment of November 10, 2021 granting the Motion for Summary Judgment filed by Plaintiff/Appellant Randall Francis. Costs of this proceeding are assessed to Defendant/Appellee Travelers Property Casualty Company of America.

**AFFIRMED.**

21